UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MACQUAN FASHAW,

                              Petitioner,

                    -v.-

THOMAS GRIFFIN,

                              Respondent.

17 Civ. 7328 (KPF)

**OPINION AND ORDER
ADOPTING REPORT AND
RECOMMENDATION**

KATHERINE POLK FAILLA, District Judge:

Pending before the Court is the August 25, 2020 Report and

Recommendation from United States Magistrate Barbara Moses (the "Report"

(Dkt. #19), attached), addressing Petitioner Macquan Fashaw's petition for a

writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  Judge Moses

recommends that Fashaw's petition (the "Petition") be dismissed in its entirety.

The Court has examined the Report and notes that no party has objected

within the fourteen-day period from its service, as provided by 28 U.S.C.

§ 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  For the

reasons set forth below, the Court finds no error in the Report and adopts it in

its entirety.

## BACKGROUND

The relevant facts underlying this action are set forth in the Report, and

the Court assumes familiarity with them.  A brief overview is set forth herein,

drawing from the recitation of the facts in the Report (*see* Report 2-11), as well

as from entries in the public docket.

On February 24, 2011, Fashaw was arrested in connection with the February 14, 2011 assault and robbery of Nathalio Peguero.  (Report 3-4). Prior to Fashaw's arrest, Peguero had identified him as his assailant from a photo array shown to him in the hospital while he recovered from gunshot wounds sustained during the assault.  (*Id.* at 3).  Detectives and officers from the New York City Police Department (the "NYPD") subsequently came to the home of Fashaw's father, and proceeded to take Fashaw into custody upon hearing a "loud noise, like a boom," from a bedroom in which Fashaw's father confirmed Fashaw was located.  (*Id.*).  The officers did not have a warrant for Fashaw's arrest.  (*Id.*).

In the hours after Fashaw's arrest, he was twice read his *Miranda* rights, and twice waived them before making statements to an NYPD officer and to an Assistant District Attorney about his whereabouts on the night of the robbery. (Report 3-4).  The same day, Peguero identified Fashaw in a lineup.  (*Id.* at 4).

Fashaw later moved to suppress statements that he made to the police and the prosecutor, and on April 16 and 18, 2012, Justice Renee White of the New York County Supreme Court conducted a hearing on Fashaw's motions to determine whether Fashaw's statements should be suppressed as the unattenuated fruits of an unlawful arrest under *Payton* v. *New York*, 445 U.S. 573 (1980).  (Report 4).  At the conclusion of the hearing, and following testimony from certain of the officers involved in Fashaw's arrest and interviews, Justice White denied Fashaw's motion.  (*Id.* at 4-5).  On April 18 and 23, 2012, Justice White conducted a hearing pursuant to *People* v.

*Molineux*, 168 N.Y. 264 (1901), to determine the admissibility of certain evidence retrieved from Fashaw's Facebook account.  She ruled admissible limited portions of Fashaw's Facebook communications, all of which had been sent and posted in close proximity to the date of the assault and which, in the court's view, were probative of either Fashaw's identity or his consciousness of guilt.  (*Id.* at 5-6).

On April 30, 2012, following a six-day trial in the New York County Supreme Court and two days of deliberations,[1] a jury found Fashaw guilty of five counts: one count of assault in the first degree; two counts of robbery in the first degree; and two counts of criminal possession of a weapon in the second degree.  (Report 8).  The jury acquitted Fashaw of attempted murder in the second degree.  (*Id.*).  On May 15, 2012, Fashaw was sentenced to concurrent prison terms of 18 years and 15 years.  (*Id.* at 8-9).

Fashaw filed a timely notice of appeal to the Appellate Division, First Department, presenting four questions:

> Whether evidence that Mr. Fashaw committed the robbery and assault was legally insufficient, as a matter of law, where, in the absence of physical evidence linking Mr. Fashaw to the crimes, the prosecution's case rest on the complainant's    unreliable    and    uncorroborated

---

[1]    The trial included testimony from Peguero in which he identified Fashaw as his assailant.  (Report 7).  Following the completion of the People's case in chief at trial, Fashaw made an oral motion to dismiss the indictment pursuant to N.Y. Crim. Proc. Law § 290.10, on the ground that the trial evidence was not legally sufficient to establish the offenses charged.  Fashaw argued that no physical evidence linked him to the crime and no eyewitness testimony other than Peguero's identified him as the assailant; that Peguero's identification was unreliable because of his poor eyesight and his generic description of his assailant as a black male wearing a black hoodie; and that Peguero's first identification was tainted by the police officer who came into his hospital room.  Justice White denied the motion.  (*Id.* at 7-8).

3

identification testimony; alternatively, whether the verdict is against the weight of the evidence. . . .

Whether the introduction of Mr. Fashaw's Facebook entries as evidence of consciousness of guilt, over objection, denied Mr. Fashaw his due process right to a fair trial, where the alleged nexus between the postings and the assailant's identity was highly speculative and, in any event, unduly prejudicial due to the vulgar language and irrelevant references to drugs, guns, and racial slurs. . . .

Whether Mr. Fashaw's oral and videotaped statement should be suppressed as the fruit of an illegal arrest, where the suppression court, upon properly determining that Mr. Fashaw's warrantless arrest violated *Payton* v. *New York*, 445 U.S. 573 (1980), erroneously held, over objection, that the statements were attenuated from the illegality even though both statements occurred as an unbroken chain of events mere hours after the illegal arrest. . . .

Whether Mr. Fashaw's 18-year sentence is unduly harsh and severe, particularly in light of his minor criminal history, rehabilitative potential, and significantly lower sentencing offer before trial.

(Report 9).

On December 10, 2015, the Appellate Division rejected each claim on the merits. (Report 9). Following this decision, Fashaw sought leave to appeal to the New York Court of Appeals, and was denied such leave on June 24, 2016. (*Id.* at 10-11).

On September 26, 2017, Fashaw filed the instant Petition for *habeas corpus* pursuant to 28 U.S.C. § 2254, raising the same four claims he had asserted on direct appeal. (Dkt. #1 at 1-4; Report 11). The Court granted Fashaw's request to proceed *in forma pauperis* (Dkt. #4; Report 11), and referred the matter to Magistrate Judge Moses for a report and

recommendation (Dkt. #7; Report 11).  On February 27, 2018, Respondent filed a memorandum of law in opposition to the Petition (Dkt. #10; Report 11), as well as an answer to the Petition (Dkt. #9; Report 11), the latter of which enclosed the state court record and trial court transcripts.  Respondent argued, *inter alia*, that Fashaw's *habeas* claims, with one exception, were procedurally barred because he had not raised them to the New York Court of Appeals. (Dkt. #10 at 2, 17-18, 29; Report 11).

On April 24, 2020, Judge Moses ordered Respondent to supplement the record with a copy of Fashaw's initial letter to the Clerk of Court of the New York Court of Appeals.  (Dkt. #13; Report 11).  In an affidavit and letter dated May 11, 2020, Respondent reported that he could not produce Fashaw's initial letter and on that basis withdrew his argument that Fashaw's claims were procedurally barred.  (Dkt. #17, 18; Report 11-12).

On August 25, 2020, Judge Moses issued the Report and recommended that the Court dismiss the Petition in its entirety.  (Report 28).  Given both the incomplete record on whether Fashaw had raised all four of his *habeas* claims to the New York Court of Appeals, as well as Fashaw's *pro se* status, Judge Moses recommended that each of his four claims be deemed exhausted to the extent they were raised to the Appellate Division.  (*Id.* at 14-15).  Judge Moses proceeded to recommend that this Court find that each of Fashaw's *habeas* claims failed under the Antiterrorism and Effective Death Penalty Act's deferential standard of review.

5

With respect to Fashaw's claims that the evidence presented at trial was legally insufficient to establish that he was Peguero's assailant,[2] Judge Moses found that Fashaw could not overcome the "doubly deferential standard of review" required by the Second Circuit, under which a federal court may not grant the writ of *habeas corpus* unless it concludes "that *no* reasonable court could have held that *any* reasonable jury could have read the evidence to establish petitioner's guilt beyond a reasonable doubt." (Report 18 (quoting *Garbutt* v. *Conway*, 668 F.3d 79, 81-82 (2d Cir. 2012) (per curiam) (emphases in original))). Judge Moses determined that the Appellate Division could have reasonably concluded that Peguero's identification, together with the circumstantial evidence in the record related to Fashaw's Facebook posts and messages, provided a legally sufficient basis for the jury's conclusion that Fashaw was Peguero's assailant. (*Id.* at 18-20).

Judge Moses next considered Fashaw's second claim that the admission of his Facebook posts and messages was unduly prejudicial and deprived him of a fair trial in violation of the Sixth and Fourteenth Amendments, and found that this claim also failed on the merits. Judge Moses observed that Fashaw had to demonstrate that the state court's determinations on the admissibility of this evidence rose to the level of depriving him of a "fundamentally fair trial." (Report 21 (quoting *Zarvela* v. *Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (citation

---

[2]     Judge Moses did not consider the merits of Fashaw's argument that in the alternative, his guilty verdict was against the weight of the evidence, noting that Respondent had correctly argued that weight-of-the-evidence claims are grounded in state law and are not cognizable on federal *habeas* review. (Dkt. #10 at 15-16; Report 17).

omitted))).  As Justice White had conducted a thorough hearing on the admissibility of Fashaw's Facebook posts and messages, admitted only those entries that were close in time to the robbery and that "went to consciousness of guilt as well as identity," and provided an appropriate jury instruction, Judge Moses agreed with the Appellate Division's holding that this ruling did not violate New York law.  (*Id.* at 22-23).[3]

Judge Moses also concluded that Fashaw could not obtain *habeas* relief on his claim that his oral and videotaped statements made after his arrest should have been suppressed as the fruit of an illegal arrest, as Fashaw had not demonstrated that he had been denied "an opportunity for full and fair litigation of the claim in the state courts."  (Report 24-25 (quoting *Applewhite* v. *McGinnis*, No. 04 Civ. 6153 (PKC) (JCF), 2006 WL 1317016, at *2 (S.D.N.Y. May 15, 2006) (citation omitted))).  Specifically, Judge Moses reasoned that Fashaw had presented neither of the limited instances in which a court may review Fourth Amendment claims in *habeas* proceedings.  (*Id.* at 24-25).[4] Lastly, Judge Moses found that Fashaw's excessive sentence claim was not a

---

[3]   Judge Moses added that even assuming *arguendo* that the Appellate Division had erred in affirming the admission of Fashaw's Facebook posts and messages, the error was not "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it."  (Report 23-24 (quoting *Smith* v. *Greiner*, 117 F. App'x 779, 781 (2d Cir. 2004) (summary order))).

[4]   Judge Moses found that even were she to reach the merits of Fashaw's Fourth Amendment claim, she would have rejected the claim under the deferential standard required under 28 U.S.C. § 2254(d).  (Report 26).

cognizable *habeas* claim as it had been presented to both the Appellate Division and the Court as a question of state law. (*Id.* at 27).[5]

Objections to the Report were due on or before September 8, 2020. (Report 29). Neither party filed objections to the Report.

## DISCUSSION

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989). A court may also accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See Ramirez* v. *United States*, 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012) (citation omitted). A magistrate judge's decision is clearly erroneous only if the district court is "'left with the definite and firm conviction that a mistake has been committed.'" *Easley* v. *Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "A party's failure to object to a report and recommendation, after receiving clear notice of the consequences of such a failure, operates as a waiver of the party's right both to object to the report and recommendation and to obtain appellate review." *Grady* v. *Conway*, No. 11 Civ. 7277 (KPF) (FM), 2015 WL 5008463, at

---

[5]     Even had Fashaw articulated a federal basis for his sentence challenge, Judge Moses concluded that such a claim would fail because Fashaw's concurrent sentences were within the range prescribed by state law, and accordingly did not present any federal constitutional issues. (Report 27-28 (quoting *Melendez* v. *LaValley*, 942 F. Supp. 2d 419, 424 (S.D.N.Y. 2013) ("It is well established that generally when a sentence falls within the range prescribed by state law, the length of the sentence may not be raised as a basis for federal habeas relief."))).

*3 (S.D.N.Y. Aug. 24, 2015) (citing *Frank* v. *Johnson*, 968 F.2d 298, 300 (2d Cir. 1992)).

Because Fashaw has not filed an objection to the Report, he has waived his right to object and to obtain appellate review.  Even so, the Court has reviewed the Report and finds that its reasoning is sound and it is grounded in fact and law.  Having reviewed the record, the Court finds no clear error and adopts the Report in its entirety.

## CONCLUSION

The Court agrees completely with Judge Moses' well-reasoned Report and hereby adopts its reasoning by reference.  Accordingly, it is ordered that the Petition is DISMISSED with prejudice.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.  The Clerk of Court is further directed to mail a copy of this Opinion and Order to Petitioner at his address of record.

SO ORDERED.

Dated:     November 4, 2020
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

9



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MACQUAN FASHAW,

         Petitioner,

    -against-

THOMAS GRIFFIN,

         Respondent.

17-CV-7328 (KPF) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. KATHERINE POLK
FAILLA**

**BARBARA MOSES, United States Magistrate Judge.**

    Petitioner Macquan Fashaw, proceeding *pro se*, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Fashaw is serving concurrent determinate sentences totaling eighteen years imprisonment after having been convicted by a jury in New York Supreme Court, New York County, on May 15, 2012, of one count of assault in the first degree in violation of N.Y. Penal Law § 120.10; two counts of robbery in the first degree in violation of N.Y. Penal Law § 160.15; and two counts of criminal possession of a weapon in the second degree in violation of N.Y. Penal Law § 265.03. *See* Pet. (Dkt. No. 1) at 1; Fleischman Decl. (Dkt. No. 9) ¶ 1.

    In this action, referred to me for report and recommendation (Dkt. No. 7), petitioner presses the same four claims he raised on direct appeal to the Appellate Division, First Department, asserting that: (1) the evidence that petitioner committed the assault and the robbery was legally insufficient and against the weight of evidence in violation of the Fourteenth Amendment and comparable provisions of New York law; (2) the admission of petitioner's Facebook posts and messages was unduly prejudicial in violation of the Sixth and Fourteenth Amendments, and comparable provisions of New York Law; (3) petitioner's oral and videotaped statements should have been suppressed as the fruit of an illegal arrest; and (4) petitioner's concurrent determinate sentence was unduly harsh in light of his minor criminal history, his rehabilitative potential, and the lower sentencing offer he received prior to trial. Pet. at 2, 4. The

Appellate Division considered and rejected each of these arguments on direct appeal. *See People v. Fashaw*, 134 A.D.3d 490, 21 N.Y.S.3d 235 (1st Dep't 2015).

For the reasons set forth below, I respectfully recommend that the petition be denied.

## I.   BACKGROUND

### A.   Factual Background

Shortly after 1:00 a.m. on February 14, 2011, Nathalio Peguero was walking toward his West 105th Street apartment when he noticed that he was being followed by a man, whom he later identified as petitioner. (Tr. (Dkt. No. 9-3) 6-7, 14.)[1] Peguero twice looked back at the man and continued on toward his building. (Tr. 6-7.) The man then pushed Peguero from behind and threatened him at gunpoint, demanding, "[g]ive me everything you got before I pop you." (Tr. 7, 9.) Peguero fought back and tried to wrest away control of the gun. (Tr. 7.) The man shot Peguero in the abdomen, leaving him wounded on the sidewalk in front of his building. (Tr. 7, 129.) The shooter then took Peguero's cellphone from the sidewalk and fled. (Tr. 13.)

In the minutes and hours following the assault and robbery, petitioner posted messages on his Facebook account and corresponded with several other Facebook users. (Tr. 268-76.) At 1:26 a.m., petitioner messaged a Facebook account known as King Smoke, stating that he could not come to an unspecified neighborhood because it was "hot." (Tr. 272.) Around 2:30 a.m., petitioner posted to his own Facebook page: "[s]ometimes I sit and ask myself why the fuck you do what you do." (Tr. 273.) Several hours later, petitioner messaged the King Smoke account to apologize for being unable to meet earlier that evening, writing, "My bad. I got in some shit."

---

[1] "Tr." refers to the transcript of petitioner's trial. (Dkt. No. 9-3 at ECF pages 1-388.) "Hr'g Tr." refers to the transcript of petitioner's suppression and evidentiary hearings. (Dkt. No. 9-2 at ECF pages 1-199.) "Sent. Tr." refers to the transcript of petitioner's sentencing proceeding. (Dkt. No. 9-3 at ECF pages 389-400.) "SR" refers to the state court record. (Dkt. No. 9-1.)

(*Id*.) He added, "Real shit." (*Id*.) Two days later, another Facebook user messaged petitioner and warned him to "[s]tay away from the hood for a few days," on account of an individual, "Mike," who had been "bagged . . . because of the jack." (Tr. 274.)

The day after the shooting, Detective Daniel Lapuerta of the New York Police Department (NYPD) retrieved Peguero's stolen cell phone from a man named Michael Statuto in the Bronx. (Tr. 60-61, 65-66.) Statuto provided Detective Lapuerta with information tying the phone to petitioner. (Tr. 66-68.)[2] Detective Lapuerta returned the phone to Peguero in the hospital, where he was recovering from his gunshot wounds. (Tr. 39-40.) Shortly thereafter, Peguero was provided a photo array, from which he identified petitioner as his assailant, writing, "looks like the guy who shot me." (Tr. 40-41.)

On February 24, 2011, at or around 6:00 a.m., Detectives Lapuerta, DeRosa, and Prokopez arrived with the NYPD's Violent Felony Apprehension Team to the home of petitioner's father, McDonald Fashaw (Fashaw Sr.), in Brooklyn. (Hr'g Tr. (Dkt. No. 9-2) 10-11, 32-33.) Fashaw Sr. opened the door and confirmed to the officers that petitioner was inside. (Tr. 33.) The officers entered the "pitch dark" apartment and continued talking to Fashaw Sr. when a sudden "loud noise, like a boom," sounded from the front bedroom. (Hr'g Tr. 33-35.) Fashaw Sr. confirmed to Detective Michael DeRosa of the Violent Felony Team that petitioner was in the front bedroom. (Hr'g. Tr. 10.) Detective DeRosa then proceeded, without a warrant, to handcuff petitioner and transfer him into Detective Lapuerta's custody. (Hr'g Tr. 11-14, 17.)

Detective Lapuerta drove petitioner to the 24th Precinct in Manhattan, arriving at or around 7:40 a.m. (Hr'g Tr. 34, 40.) He brought petitioner to the precinct's interview room, where

---

[2] Michael Statuto was slated to be a material witness for the prosecution, but refused to testify at trial. (Tr. 179-85.)

petitioner's handcuffs were removed and he was provided food. (Hr'g Tr. 37.) Detective Lapuerta then left the room, leaving petitioner alone. (Hr'g. Tr. 36-37.) At or around 8:50 a.m., Detective Lapuerta returned and read petitioner his *Miranda* rights. (Hr'g. Tr. 36-37, 40.) Petitioner waived his *Miranda* rights and told Detective Lapuerta that, on the night of the robbery, he was purchasing marijuana in the vicinity of where Peguero was robbed. (Tr. 73-74). Around 1:00 p.m., Peguero identified petitioner in a line-up. (Tr. 73-78.) Petitioner was then removed to the precinct's cells. (Tr. 69-70, 78-79.) Around 3:30 p.m., petitioner was taken to the Assistant District Attorney's office, where he was reread his *Miranda* rights, which he again waived before going on tape for an interview. (Tr. 79-80, 93-94.)

   **B.   Suppression Hearing**

   Petitioner moved to suppress statements that he made to the police and to the prosecutor in the hours following his arrest. On April 16 and 18, 2012, Justice Renee White of the Supreme Court of New York, New York County, conducted a *Payton* hearing on petitioner's motions. (Hr'g Tr. 2-115.)[3] The People called Detectives DeRosa and Lapuerta as witnesses. (Hr'g Tr. 3-45.) Petitioner did not call any witnesses. Detective DeRosa testified to the sequence of events following the Apprehension Team's arrival at Fashaw Sr.'s apartment: they entered the apartment and began speaking with Fashaw Sr. when a loud noise led them to petitioner, whom Detective DeRosa handcuffed at the scene. (Hr'g Tr. 12-13.) Detective DeRosa testified that he had no arrest warrant for petitioner. (Hr'g Tr. 14.)

   Detective Lapuerta also testified that he did not communicate with petitioner between the time of the arrest and petitioner's arrival at the precinct, with the exception of telling petitioner

---

[3] Through a *Payton* hearing, a defendant may seek to suppress evidence that was obtained as a result of an unlawful arrest. *See Payton v. New York,* 445 U.S. 573 (1980).

4

that he would be fed. (Hr'g Tr. 34.) He then described petitioner's custody, testifying that between petitioner's initial detention around 6:50 a.m. and his recorded interview with the Assistant District Attorney after 3:00 p.m., petitioner was identified in a police line-up, was twice administered his *Miranda* rights, and twice waived those rights. (Hr'g Tr. 34-45, 49-54.)

Petitioner sought to suppress the statements he made after his warrantless arrest on the grounds that the arrest was unlawful and the statements were insufficiently attenuated from that arrest. (Hr'g Tr. 90.) Based on the detectives' testimony, the People countered that, even if the warrantless arrest was a *Payton* violation, it was not flagrant because petitioner's father never requested that the police leave his apartment. (Hr'g Tr. 98-99.) The People argued further that the police reasonably thought that petitioner was trying to flee the apartment and had a reasonable concern for their safety when they handcuffed him. (Hr'g Tr. 99.)

At the conclusion of the *Payton* hearing, Justice White denied petitioner's motion to suppress the statements he made after his arrest, concluding that the violation was not flagrant and that, even though the Apprehension Team lacked consent or a warrant to enter Fashaw Sr.'s apartment, they had sufficient probable cause for petitioner's arrest based on Peguero's identification of him nine days earlier. (Hr'g Tr. 105-14.) Justice White also found that petitioner was properly administered his *Miranda* warnings, and waived those rights. (Hr'g Tr. 111-13.) She also noted that plaintiff consistently denied "any involvement in the crime." (Hr'g Tr. 112.)

### C.      Admissibility of Evidence

On April 18 and 23, 2012, Justice White conducted a *Molineux* hearing as to the admissibility of evidence retrieved from petitioner's Facebook account. (Hr'g Tr. 122-165; *id*. at

ECF pages 191-96.)[4] The People argued that petitioner's Facebook activity, conducted under the username "Maquon Wildboy Grip," contained post-shooting posts and messages that were sufficiently close in time to the crime to show petitioner's consciousness of guilt, as well as pre-shooting posts and messages that contained slang references to guns,[5] and could be used to show his intent to commit a crime with a gun. (Hr'g Tr. 124, 146, 155-65, 173, 181-83.) Petitioner countered that the People's reliance on ambiguous, non-inculpatory statements comprising street slang, exchanged with unidentified users who would not be called as witnesses, presented ambiguities that could not be fairly resolved by a jury. (Hr'g Tr. 143-46, 148.) As to his references to guns, petitioner argued that the Facebook platform lends itself to exaggerated or false boasting; that his claims about gun possession could not be corroborated, and that some of his language was inspired by a rap song, rather than by events in his own life. (Hr'g Tr. 158; *id.* at ECF pages 193-94.)

On April 23, 2012, Justice White ruled admissible limited portions of petitioner's Facebook communications, all of which were sent or posted in close proximity to the crime and, in the court's view, tended to show either petitioner's identity or his consciousness of guilt. (Hr'g Tr. at ECF pages 191-96; *see also* Tr. 272-75.)

---

[4] A *Molineux* hearing is used to determine whether the prosecution can introduce evidence of a criminal defendant's uncharged crimes or other bad acts to establish motive, intent, the absence of mistake or accident, a "common scheme or plan," or identity. *See People v. Molineux*, 168 N.Y. 264, 61 N.E. 286 (1901). The last eight pages of the *Molineux* hearing, occurring on April 23, 2012, are separately paginated beginning with page 1. To avoid confusion, I refer to those pages by their ECF page numbers.

[5] For example, on February 13, 2011, petitioner wrote, on Facebook, "I was just at log with my 40." (Hr'g Tr. 156-57.) The People contended that "40" was a reference to a .40 caliber gun. (Hr'g Tr. 157.)

### D. Trial

Petitioner's trial began two days later, on April 25, 2012. (Tr. 1.) The trial spanned six days, culminating in the jury's verdict on April 30, 2012. (Tr. 381-87.) I summarize only those portions of the trial record which are relevant to petitioner's *habeas* claims.

#### 1. Identification of Petitioner

On April 25, 2012, Peguero testified to his identification of petitioner as the assailant. (Tr. 8-15, 30-42. 46-47.) Peguero described being followed on February 14, 2011, by a dark-skinned man between 5'7" and 5'8" who wore jeans and a black coat or hoodie. (Tr. 9.) Peguero could not recall his assailant's other physical characteristics or features. (Tr. 9, 38-39.) Peguero also testified that he was near-sighted but did not wear glasses. (Tr. 30.) He stated, however, that the street on which he encountered his assailant was "well lit." (Tr. 9.)

Peguero testified that the confrontation between the men was brief and violent. (Tr. 9-11.) As they fought over the gun, Peguero and the assailant were at times facing and at times had their backs to one another. (Tr. 9-11.) Peguero confirmed that two days after he was shot, he identified petitioner in a photo array, writing underneath petitioner's photograph: "looks like the guy that shot me." (Tr. 41.) Peguero also identified petitioner in a police lineup on February 24, 2011, and once again in the courtroom on April 25, 2012. (Tr. 14-15.)

On April 27, 2012 – after the People completed their case in chief and rested – petitioner made an oral motion to dismiss the indictment pursuant to N.Y. Crim. Proc. Law. § 290.10 on the ground that the trial evidence was not legally sufficient to establish the offenses charged. (Tr. 276-78.) Petitioner argued that no physical evidence linked him to the crime and no eyewitness testimony other than Peguero's identified him as the assailant (*id.*); that Peguero's identification was unreliable because of his poor eyesight and his generic description of petitioner as a black male wearing a black hoodie (Tr. 276); and that Peguero's first identification was tainted by the

7

police officer who came into petitioner's hospital room "a day after he was shot," first "showing him . . . the phone that was taken" and "then . . . leading him to believe that someone had been apprehended for that theft." (Tr. 277-78.) Justice White denied the motion. (*Id.*)

### 2.    Jury Charges and Verdict

Justice White charged the jury on six counts: attempted murder in the second degree; assault in the first degree; two counts of robbery in the first degree; and two counts of criminal possession of a weapon in the second degree. (Tr. 330-45.) Justice White instructed the jurors that in assessing whether petitioner's Facebook entries constitute consciousness of guilt, they "must consider whether the conduct has an innocent explanation." (Tr. 321.) With respect to Peguero's identification testimony, Justice White reminded the jurors that "the main issue in the trial is the identification of the defendant as the person who committed the crimes charged." (*Id.*) She instructed them to consider Peguero's opportunity "during the crime" to have observed his assailant's physical characteristics, as well as his capacity to "reason and remember" what he observed. (Tr. 325.) Justice White also advised the jury that "witness' testimony is sufficient to convict if you believe it beyond a reasonable doubt and if it establishes either standing alone or with any other evidence, all of the elements of the crimes charged beyond a reasonable doubt." (Tr. 328.)

On April 27 and 30, 2012, the jury deliberated. (Tr. 349-81.) On April 30, 2012, the jury announced its verdict, finding petitioner guilty on all counts except attempted murder in the second degree. (Tr. 381-87.)

### E.    Sentence

On May 15, 2012, Justice White sentenced petitioner to concurrent prison terms of (i) 18 years for assault in the first degree and one count of robbery in the first degree, and (ii) 15 years

for one count of robbery in the first degree and two counts of criminal possession of a weapon in the second degree. (Sent. Tr. 1-12.)

### F.   Direct Appeal

On May 17, 2012, petitioner timely appealed to the Appellate Division, First Department. (SR 201.) His brief on appeal presented four questions:

> Whether evidence that Mr. Fashaw committed the robbery and assault was legally insufficient, as a matter of law, where, in the absence of physical evidence linking Mr. Fashaw to the crimes, the prosecution's case rest on the complainant's unreliable and uncorroborated identification testimony; alternatively, whether the verdict is against the weight of the evidence. . . .
>
> Whether the introduction of Mr. Fashaw's Facebook entries as evidence of consciousness of guilt, over objection, denied Mr. Fashaw his due process right to a fair trial, where the alleged nexus between the postings and the assailant's identity was highly speculative and, in any event, unduly prejudicial due to the vulgar language and irrelevant references to drugs, guns, and racial slurs. . . .
>
> Whether Mr. Fashaw's oral and videotaped statement should be suppressed as the fruit of an illegal arrest, where the suppression court, upon properly determining that Mr. Fashaw's warrantless arrest violated *Payton v. New York*, 445 U.S. 573 (1980), erroneously held, over objection, that the statements were attenuated from the illegality even though both statements occurred as an unbroken chain of events mere hours after the illegal arrest. . . .
>
> Whether Mr. Fashaw's 18-year sentence is unduly harsh and severe, particularly in light of his minor criminal history, rehabilitative potential, and significantly lower sentencing offer before trial.

(SR 9.)

On December 10, 2015, the Appellate Division rejected each claim on the merits. It held that the verdict "was based on legally sufficient evidence and was not against the weight of the evidence[.]" *Fashaw*, 134 A.D. 3d at 491, 21 N.Y.S.3d at 236. It determined that Peguero had "sufficient opportunity" to identify Petitioner as his assailant, and that the jury could have found that the remaining evidence corroborated Peguero's testimony. *Id.* The Appellate Division also held that the trial court properly admitted entries from petitioner's Facebook account because

"the jury could have reasonably inferred that they made reference to this case, and that they tended to show a consciousness of guilt," because "[t]here was nothing in the content of these entries that was unduly prejudicial," and because "the probative value of this evidence outweighed any prejudicial effect." *Id.*

The Appellate Division further held that the record supported the trial court's determination that petitioner's "oral and videotaped statements were attenuated from any illegality" despite the officers' *Payton* violation. *Fashaw*, 134 A.D.3d at 491, 21 N.Y.S.3d at 236. It reasoned that "[t]here was an interval of several hours between defendant's arrest and the interrogation, which was conducted at the precinct after he had been given something to eat and drink and left alone for a time, and after *Miranda* warnings were given," and that the officers' conduct was not flagrant, "because the detectives attempted a peaceful, consensual entry, for which a warrant is unnecessary, and events ensued that caused them to fear for their safety." *Id.* In any event, the Appellate Division noted, "any error in the admission of this evidence was harmless," *id.*, presumably because petitioner maintained his innocence throughout his interrogations.

### G.   Application for Leave to the Court of Appeals

Following the Appellate Division's decision, petitioner sought leave to appeal to the New York Court of Appeals. (*See* SR 183-90.) The record in this case contains only the second of two letters petitioner submitted in connection with his application for leave: a February 16, 2016 letter from his counsel to the Hon. Jenny Rivera, Judge of the New York Court of Appeals. (SR 183-90.)[6] In that letter, petitioner urged that his *Payton* issue was "leave-worthy," writing, "The

---

[6] Under the rules of the Court of Appeals, applications for leave to appeal are made by letter addressed to the Clerk of that court. *See* N.Y. Ct. of Appeals R. 500.20(a). "After the application

leave-worthy issue presented here is: in determining whether statements made following a *Payton* violation are attenuated from the illegality of the warrantless home arrest, must suppression courts take into account the purposefulness and flagrancy of the police misconduct in failing to obtain an arrest warrant?" (SR 184.) On June 24, 2016, the Court of Appeals denied leave to appeal. *People v. Fashaw*, 27 N.Y.3d 1131, 61 N.E.3d 512 (2016).

     **H.**    *Habeas Corpus* **Petition and Proceedings in this Court**

On September 26, 2017, petitioner filed his *pro se habeas* petition (dated September 15, 2017), raising the same four claims he asserted on direct appeal. Pet. at 1-4.

On November 20, 2017, the Court granted petitioner's request to proceed *in forma pauperis*. (Dkt. No. 4.)

On December 11, 2017, the Hon. Katherine P. Failla, United States District Judge, referred the case to me for report and recommendation. (Dkt. No. 7.)

On February 27, 2018, respondent filed a memorandum of law in opposition to the petition (Resp. Mem.) (Dkt. No. 10), together with the Fleischman Declaration, which attached the state court record and trial court transcripts. Respondent argued, among other things, that all of petitioner's habeas claims save one were procedurally barred because he did not raise them to the New York Court of Appeals. Resp. Mem. at 2, 17-18, 29.

On April 24, 2020, the Court directed respondent to supplement the record with a copy of petitioner's initial letter to the Clerk of the Court of the New York Court of Appeals. (Dkt. No. 13.) By affidavit (Dkt. No. 17) and letter (Dkt. No. 18) dated May 11, 2020, respondent reported

---

is assigned to a Judge for review," the applicant is then "given the opportunity to serve and file additional submissions" to the assigned judge. N.Y. Ct. of Appeals R. 500.20(a)(4). In this case, respondent did not initially submit – and has since been unable to identify or locate – a copy of petitioner's first letter to the Court of Appeals. (*See* Dkt. Nos. 13, 17.)

that it could not produce the initial letter and on that basis withdrew its argument that petitioner's claims were procedurally barred.

## II.   DISCUSSION

### A.   Timeliness

#### 1.   Legal Standard

Under 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner must file his *habeas corpus* petition within one year of the date his conviction becomes "final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

#### 2.   Application

Petitioner's conviction became final on September 22, 2016 – 90 days after the New York Court of Appeals denied petitioner's application for leave to appeal – because this is when petitioner's time to petition for a writ of *certiorari* before the United States Supreme Court expired. *See* Sup. Ct. R. 13(1) ("[A] petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."); *Forman v. Artuz*, 211 F. Supp. 2d 415, 419 n.11 (S.D.N.Y. 2000) (petitioner had 90 days from the date the Court of Appeals denied his motion for reconsideration to seek a writ of *certiorari*).

The Petition is dated – and deemed filed – September 15, 2017, which was within AEDPA's one-year statute of limitations. *See Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001) (under the "prison mailbox rule," an incarcerated petitioner's pleading is deemed filed on the date it is given to correctional authorities to mail), *cert. denied*, 534 U.S. 886 (2001).

### B.    Exhaustion and Procedural Default

#### 1.    Legal Standard

Exhaustion of state remedies is a condition precedent to federal *habeas* relief. 28 U.S.C. § 2254(b)(1)(A). State remedies are exhausted when a petitioner "fairly present[s]" each of his *habeas* claims in "each appropriate state court (including a state supreme court with powers of discretionary review," in a manner that "alert[s] that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (internal quotations and citations omitted); *see also* 28 U.S.C. § 2254(c) (if the petitioner still has "the right under the law of the State to raise, by any available procedure, the question presented," he "shall not be deemed to have exhausted" his state remedies).

A petitioner can "fairly present" his claims in several ways, including by citing to the applicable provisions of the federal Constitution in his state-court briefs, *see Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001), or by citing "pertinent federal cases employing constitutional analysis." *Rustici v. Phillips*, 308 F. App'x 467, 469 (2d Cir. 2009) (internal quotation marks and citation omitted). However, a claim is not "fairly present[ed]" to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32. Moreover, the federal claim must be presented with some specificity: "a general appeal to a constitutional guarantee as broad as due process" is generally insufficient "to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996) (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).

"As a general matter, unexhausted claims must be dismissed without prejudice to afford the petitioner an opportunity to exhaust the claim in state court." *Rodriguez v. Sheaham*, 2016 WL 3522278, at *3 (S.D.N.Y. June 21, 2016) (citing *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir.

2011)). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). In other words, a court may "deny – but not grant" unexhausted claims on the merits. *Bordas v. Walker,* 2000 WL 1867915, at *4 (S.D.N.Y. Dec. 20, 2000).

If a petitioner has failed to exhaust his claims in state court, but no longer has a procedural mechanism to do so – for example, because he failed to take the next step in state court before the applicable time limit expired – his claims are deemed exhausted but "procedurally defaulted" (or "procedurally barred"), precluding federal *habeas* review. *Coleman v. Thompson*, 501 U.S. 722, 728, 744 (1991). As the Supreme Court explained in *Coleman*, "a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.* at 731-32. *Accord Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001)) ("[I]f the state prisoner fails to exhaust his state remedies in a manner in which, were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule, we must deem the claim procedurally defaulted.") (internal quotation marks omitted). A procedurally defaulted claim must be denied unless the petitioner can demonstrate "cause and prejudice," that is, "cause" for his failure to raise the claim in compliance with state law, coupled with "prejudice" as a result of the alleged constitutional violation, or, in the alternative, a "fundamental miscarriage of justice," that is, that petitioner is actually innocent of the crime for which he was convicted. *Coleman*, 501 U.S. at 747-48.

## 2. Application

In this case, petitioner presents four claims for *habeas* review. Pet. at 1-4. He raised all four in his appeal to the Appellate Division. (SR (Dkt. No. 9-1) 1-78.) Though he raised only one

of the four – his claim based on the State's *Payton* violation – in his second letter to the New York Court of Appeals (SR 185-92), the record in this case does not contain his initial letter to that court, making it impossible for this Court to determine whether he raised some or all of his remaining claims there. (*See* Dkt. Nos. 13, 17, 18.) As respondent concedes in withdrawing its procedural bar argument, "the Second Circuit has held that any applicant" who sets forth all of his grounds for relief in his initial letter to the New York Court of Appeals "does not abandon any issue not addressed in any additional submission." (Dkt. No. 18 at 2) (citing *Davis*, 270 F.3d at 122-23 and *Morgan v. Bennett*, 204 F.3d 360, 370-71 (2d Cir. 2000)). *Accord Bumpus v. Warden Clinton Corr. Facility,* 311 F. App'x 400, 401 (2d Cir. 2009) ("[W]here a defendant's first letter to the Court of Appeals seeks leave to appeal all arguments raised in attached Appellate Division briefs, a follow up letter addressing only some of those arguments in more detail does not serve to narrow the scope of the claims fairly presented by the first letter.") (citations omitted). I therefore recommend, in light of the incomplete record and petitioner's *pro se* status, that each of his four *habeas* claims be deemed exhausted to the extent he raised it, in constitutional terms, in the Appellate Division.

      **C.**    **Merits**

      If a petitioner has properly exhausted his federal claims in state court, and if the last reasoned state court ruling decided his federal claims on the merits, those claims are reviewable in federal district court under AEDPA's deferential standard of review. That standard permits a district court to grant habeas relief only when the state court's opinion:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings.

28 U.S.C. § 2254(d).

"Clearly established" federal law means "the holdings, as opposed to the dicta," of the decisions of the United States Supreme Court "as of the time of the relevant state-court decision," and does not include opinions of lower federal appellate courts. *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision involves an "unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

This standard is intentionally difficult to meet. It preserves for federal courts "authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents," but "goes no further." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). A federal court cannot grant habeas relief "simply because [the] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). Similarly, an adjudication of a claim is not based on an unreasonable determination of facts "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted).

16

Applying this highly deferential standard of review, I conclude that each of petitioner's four *habeas* claims fails.

### 1.     Sufficiency of the Evidence

Petitioner first claims that the evidence presented at trial was legally insufficient to establish that he was Peguero's assailant, or alternatively, that his guilty verdict was against the weight of the evidence. Pet. at 2, 4. As respondent correctly argues, Resp. Mem. at 15-16, weight-of-the-evidence claims are grounded in state law and are not cognizable on federal *habeas* review. *Thompson v. Cunningham*, 2013 WL 3742490, at *15 (S.D.N.Y. Mar. 11, 2013) ("It is well-settled that weight-of-the-evidence claims are purely state law claims, and are therefore not cognizable on habeas review."), *report and recommendation adopted*, 2013 WL 3742490, at *1 (S.D.N.Y. June 28, 2013); *Cintron v. Fisher*, 2012 WL 213766, at *3 (S.D.N.Y. Jan. 24, 2012) ("A weight of the evidence claim is a state law claim under New York Criminal Procedure Law § 470.15(5), which allows New York appellate courts to make weight of the evidence determinations."). Such claims do not implicate the Due Process Clause – or any other provision of federal law – because "as a matter of federal constitutional law a jury's verdict may only be overturned if the evidence is insufficient to permit any rational juror to find guilt beyond a reasonable doubt." *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). I therefore address petitioner's first claim only to the extent it alleges legal insufficiency of the evidence.

The Due Process Clause prohibits conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Thus, a claim asserting that the evidence supporting the conviction "cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt" states "a federal constitutional claim," cognizable in a

*habeas* proceeding. *Jackson v. Virginia*, 443 U.S. 307, 321 (1979) (internal citations omitted). *See also Einaugler v. Supreme Court of State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (quoting *Jackson v. Virginia*, 443 U.S. at 324) ("[A] state prisoner 'is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'").

Where the state courts have decided a *habeas* petitioner's legal sufficiency claim on the merits, however, this Court must review that claim under a "doubly deferential standard of review." *Garbutt v. Conway*, 668 F.3d 79, 81-82 (2d Cir. 2012). That is so because on direct review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at 319 (emphasis in original). "[T]he only question under *Jackson* is whether [the jury's verdict] was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). Thereafter, if the state court has rejected petitioner's claim on the merits, a federal court may not grant the writ unless the state court's decision was based on "an unreasonable application of [ ] clearly established Federal law." 28 U.S.C. § 2254(d)(1). "Thus, where the state courts have denied a claim of insufficient evidence on the merits, we may not grant the writ unless we conclude that *no* reasonable court could have held that *any* reasonable jury could have read the evidence to establish petitioner's guilt beyond a reasonable doubt." *Garbutt*, 668 F.3d at 81-82 (emphases in the original).

I cannot reach that conclusion here. Reading petitioner's claim "to raise the strongest arguments that it suggests," *see Silva v. Keyser*, 271 F. Supp. 3d 527, 538 (S.D.N.Y. 2017), I construe it to assert a constitutional claim that there was insufficient evidence to support the

conclusion that he was Peguero's assailant. Petitioner argues that Peguero's eye-witness identification was unreliable (because Peguero was nearsighted, the incident occurred late at night, and Peguero had only approximately one minute to make an identification during the robbery); that there was no other eyewitness or physical evidence tying petitioner to the incident; and that the prosecution's reliance on Facebook postings and messages did not independently establish a connection between petitioner and the robbery.[7]

The fact that a conviction rests upon the testimony of a single eyewitness, with no corroborating physical evidence, does not render the evidence legally insufficient, so long as the jury has a rational basis for finding the eyewitness testimony credible. "[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." *United States v. Frampton,* 382 F.3d 213, 222 (2d Cir.) *cert. denied,* 543 U.S. 1037 (2004); *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979). Moreover, a *habeas* court may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman,* 870 F.2d 65, 71 (2d Cir. 1989), nor "make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony." *Fagon v. Bara,* 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (citing *United States v. Zabare,* 871 F.2d 282, 286 (2d Cir. 1989)). *See also Stallings v. Heath,* 2012 WL 735399, at *16 n.28 (S.D.N.Y. Mar. 7, 2012) (collecting cases holding that "questions of witness credibility are jury questions and a federal habeas court may not reassess the jury's

---

[7] In the Appellate Division, petitioner also contended that the same Facebook entries provided him a "digital alibi," because he was messaging during the time of the attack. (SR 61-62, 162-65.) I note, however, that the Appellate Division considered this point in its evaluation of petitioner's weight-of-the-evidence claim – a claim which "requires more exacting review than an insufficiency claim, because it entails a weighing of the evidence and an assessment of the credibility of the State's witnesses," *Parker v. Ercole*, 666 F.3d 830, 833 (2d. Cir. 2012) (citing *People v. Bleakely*, 69 N.Y.2d 490, 495 (1987)) – and found no error. *Fashaw*, 134 A.D.3d at 491, 21 N.Y.S.3d at 236.

finding of credibility"), *report and recommendation adopted*, 2012 WL 1538513 (S.D.N.Y. May 2, 2012).

This rule applies with full force "to credibility determinations made by juries with respect to identification testimony." *Vera v. Woods*, 2008 WL 2157112, at *9-10 (E.D.N.Y. May 21, 2008) (rejecting legal insufficiency claim by habeas petitioner where conviction was based on identification by a single eyewitness). *Accord Black v. Conway*, 2011 WL 2610530, at *9-10 (S.D.N.Y. June 30, 2011), *report and recommendation adopted*, 2012 WL 6629050 (S.D.N.Y. Dec. 20, 2012) (same, and collecting cases); *Hernandez v. Lee*, 2014 WL 1407274, at *10 (E.D.N.Y. Apr. 11, 2014) (rejecting insufficiency claim where conviction was based on identification by a single eyewitness who could not identify petitioner in court).

In this case, the jury could reasonably have credited Peguero's testimony that, despite his admitted near-sightedness, he was able to identify petitioner – from the photo array, at a lineup, and in court – after the two fought at close quarters over control of a weapon on a "well-lit" street. (Tr. 9-14.) The jury could also reasonably have treated petitioner's Facebook posts and messages as circumstantial evidence of his identity and consciousness of guilt. The Appellate Division therefore reasonably concluded that Peguero's identification, together with the circumstantial evidence in the record, provided a legally sufficient basis for the jury's conclusion that petitioner was indeed Peguero's assailant. *Fashaw*, 134 A.D.3d at 491, 21 N.Y.S.3d at 236 ("We find no basis to disturb the jury's determinations concerning identification. The victim had a sufficient opportunity to observe defendant and made a reliable identification. The jury could also have reasonably concluded that the remaining evidence tended to corroborate rather than undermine the victim's testimony.").

2.      **Admission of Facebook Evidence**

Petitioner's second claim is that the admission of his Facebook posts and messages was unduly prejudicial and deprived him of a fair trial in violation of the Sixth and Fourteenth Amendments. (SR 62-66.) This claim also fails on the merits.

A state trial court's evidentiary determinations do not implicate federal constitutional questions unless an adverse ruling deprived a petitioner of a "fundamentally fair trial." *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) (citation omitted). "That is a heavy burden, for generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation." *DeJesus v. Superintendent of Attica Corr. Facility*, 2017 WL 6398338, at *27 (S.D.N.Y. Dec. 13, 2017) (citation and internal quotation marks omitted), *report and recommendation adopted*, 2018 WL 4043144 (S.D.N.Y. Aug. 7, 2018).

The first question on *habeas* review of a state law evidentiary determination is therefore "whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional.'" *DeJesus*, 2017 WL 6398338, at *27. If there was such a violation, the petitioner must also show that the error deprived him of a fundamentally fair trial, which depends on "whether 'the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Smith v. Greiner*, 117 F. App'x 779, 781 (2d Cir. 2004) (quoting *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985)). *See also Berrios v. City of New York*, 2018 WL 4608211, at *4 (S.D.N.Y. Sept. 25, 2018) ("A two-step inquiry determines whether the trial court's exclusion of evidence violates due process rights by depriving a petitioner of his right to present a defense: (1) whether the state court violated a state evidentiary rule in excluding evidence, and if so, (2) whether that exclusion rose to the level of constitutional

error."), *certificate of appealability denied sub nom. Berrios v. New York*, 2019 WL 5542845 (2d Cir. June 19, 2019). At the second step, the court asks whether the challenged evidence was "crucial, critical, highly significant[.]" *Collins*, 755 F.2d at 19 (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982)).

Petitioner's claim does not clear the first hurdle. New York courts "admit evidence of a defendant's conduct that reveals a guilty mind," and "'[e]ven equivocal consciousness-of-guilt evidence may be admissible so long as it is relevant, meaning that it has a tendency to establish the fact sought to be proved – that defendant was aware of guilt.'" *Herrera v. Artuz*, 171 F. Supp. 2d 146, 149-50 (S.D.N.Y. 2001) (quoting *People v. Bennett*, 79 N.Y.2d 464, 470, 593 N.E.2d 279, 283 (1992)). "Courts, of course, must also consider whether the probative value of the evidence outweighs the prejudice." *Id.* at 150. "As a general rule, the trial court is granted broad discretion in making evidentiary rulings precluding or admitting such evidence and, absent an abuse of discretion, a trial court's decision should not be disturbed on appeal." *People v. Aska*, 91 N.Y.2d 979, 981, 697 N.E.2d 172 (1998). *Accord People v. Frumusa*, 29 N.Y.3d 364, 372, 79 N.E.3d 495, 501 (2017) (the Court of Appeals reviews "the trial court's exercise of its discretion in [the] balancing analysis for an abuse of discretion as a matter of law") (citations omitted).

As discussed above, Justice White conducted a thorough hearing on the admissibility of petitioner's Facebook posts and messages, and admitted only those entries that were close in time to the robbery and that "went to consciousness of guilt as well as identity." (Hr'g Tr. at ECF pages 191-94; Tr. 272-75.) Moreover, Justice White ameliorated any prejudice from admission of the Facebook entries with an appropriate jury instruction:

> In this case, the People contend that the defendant's Facebook entires [sic] constitute consciousness of guilt. In determining whether certain conduct demonstrates a consciousness of guilt, you must consider whether the conduct has an innocent explanation. Common experience teaches that even an innocent

> person who finds himself under suspicion may resort to conduct which gives the
> appearance of guilt.
>
> The weight and importance you give to evidence offered to show consciousness
> of guilt depends on the facts of the case. Sometimes such evidence is only of
> slight value, and standing alone it may never be the basis for a finding of guilt.

(Tr. 321.) As the Appellate Division held, this ruling did not violate New York law. "The court

properly exercised its discretion in admitting certain entries from defendant's Facebook account,

because the jury could have reasonably inferred that they made reference to this case, and that

they tended to show a consciousness of guilt . . . The court provided a thorough jury instruction

on the proper weighing of such evidence. There was nothing in the content of these entries that

was unduly prejudicial, and the probative value of this evidence outweighed any prejudicial

effect." *Fashaw*, 134 A.D.3d at 491, 21 N.Y.S.3d at 236. I find no error in the trial court's

admission of petitioner's Facebook entries, nor in the Appellate Division's opinion on direct

appeal.

Finally, even assuming *arguendo* that the Appellate Division erred in affirming the

admission of petitioner's Facebook posts and messages, the error was not "sufficiently material to

provide the basis for conviction or to remove a reasonable doubt that would have existed on the

record without it." *Smith*, 117 F. App'x at 781. "In assessing whether the erroneous admission of

evidence had a substantial and injurious effect on the jury's decision," courts consider:

> [T]he importance of the . . . wrongly admitted evidence, and the overall strength
> of the prosecution's case. The importance of the wrongly admitted evidence is
> determined by the prosecutor's conduct with respect to the . . . evidence, whether
> the evidence bore on an issue plainly critical to the jury's decision, and whether it
> was material to the establishment of the critical fact, or whether it was instead
> corroborated and cumulative.

*Munford v. Graham*, 467 F. App'x 18, 19-20 (2d. Cir. 2012) (citations and internal quotation and

editorial marks omitted). In this case, the most important evidence leading to petitioner's

conviction – by far – was Peguero's eyewitness identification and testimony that petitioner was his assailant. The People relied on that identification and testimony at length in summation, arguing that "[Peguero's] testimony alone is credible and reliable and proves the defendant's guilt beyond a reasonable doubt." (Tr. 300.) As noted above, a single, uncorroborated eyewitness is generally sufficient to support a conviction. *See*, *e.g.*, *Black v. Conway*, 2011 WL 2610530, at *10. In contrast, the People spent only a few paragraphs of their summation on petitioner's Facebook entries (Tr. 305-06, 308), noting that petitioner's "Facebook page by itself with nothing else could mean anything," but arguing that "with everything else . . . it could only mean one thing." (Tr. 308.) *See Martin v. Lee*, 2017 WL 2672641, at *4 (S.D.N.Y. June 20, 2017) (finding admission of co-defendants' statements harmless where they "were far from the cornerstone of the prosecution's theory"), *report and recommendation adopted*, 2018 WL 3597507 (S.D.N.Y. July 26, 2018); *Loucks v. Capra*, 2019 WL 2330295, at *13 (S.D.N.Y. Apr. 22, 2019) ("While the letters may have supported Petitioner's consciousness of guilt, their admission did not affect the fundamental fairness of the trial because the remainder of the record firmly supported Petitioner's conviction."), *report and recommendation adopted*, 2019 WL 2326225 (S.D.N.Y. May 30, 2019).

### 3.      Fourth Amendment Violation

Petitioner's third claim seeks relief on the ground that he was illegally arrested and that his oral and videotaped statements after the arrest should have been suppressed because they were insufficiently attenuated from the initial illegality. (SR 66-67.)

I conclude that petitioner's Fourth Amendment claims cannot be reviewed by this Court. Petitioner "may not obtain habeas relief on the basis of an alleged Fourth Amendment violation unless he was denied 'an opportunity for full and fair litigation' of the claim in the state courts." *Applewhite v. McGinnis,* 2006 WL 1317016, at *2 (S.D.N.Y. May 15, 2006) (quoting *Stone v.*

*Powell,* 428 U.S. 465, 494 (1976)). Courts only review Fourth Amendment claims in *habeas* proceedings in "one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir. 1992). "An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry into the petitioner's claim." *Valtin v. Hollins*, 248 F. Supp. 2d 311, 317 (S.D.N.Y. 2003).

Neither instance occurred here. New York's procedures for challenging improper acquisition of evidence, including a "record or potential testimony reciting or describing a statement" (*see* N.Y. Crim. Proc. Law § 710.10 *et seq.*), are adequate corrective procedures to constitute a full and fair opportunity to litigate a defendant's Fourth Amendment claims. *See Capellan,* 975 F.2d at 70 n.1 (quoting *Holmes v. Scully,* 706 F. Supp. 195, 201 (E.D.N.Y. 1989)) ("[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate."); *Applewhite,* 2006 WL 1317016, at *2 (same).

Moreover, petitioner was not precluded from using those procedures here. Justice White conducted a pretrial suppression hearing, which included testimony from the detectives responsible for petitioner's warrantless arrest (*see* Hr'g Tr. 2-105), and issued an oral order explaining the basis for her denial of petitioner's motion to suppress. (Hr'g Tr. 105-14.) Petitioner then pressed his unlawful arrest and suppression claims on direct appeal (SR 42-62), and the Appellate Division independently reviewed the record and rejected those claims on the merits. *Fashaw*, 134 A.D.3d at 491, 21 N.Y.S.3d at 236. The Court of Appeals was presented with the same Fourth Amendment claim but declined to disturb the decision below. (SR 198.)

"Accordingly, [petitioner's] Fourth Amendment claim cannot be reviewed by this Court." *Panzarino v. Phillips*, 2004 WL 99868, at *12 (S.D.N.Y. Jan. 22, 2004). *See also Graham v. Costello,* 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the [state] court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief."); *Applewhite*, 2006 WL 1317016, at *2 ("Petitioner was afforded the opportunity for appellate review of his Fourth Amendment claim. There was no 'breakdown' in the process, and habeas relief is barred by *Stone.*"); *Daily v. New York,* 388 F. Supp. 2d 238, 249-50 (S.D.N.Y. 2005) (finding *habeas* relief unavailable under *Stone v. Powell* where petitioner was given a full and fair opportunity to litigate his Fourth Amendment claims).

Even if I were to reach the merits of petitioner's Fourth Amendment claim under the deferential standard required under 28 U.S.C. § 2254(d), I would conclude that the Appellate Division's determination that petitioner's "oral and videotaped statements were attenuated from any illegality," *Fashaw*, 134 A.D.3d at 491, 21 N.Y.S.3d at 236, was neither "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" nor "based on an unreasonable determination of the facts in light of the evidence presented[.]" 28 U.S.C. § 2254(d). I would also conclude that the Appellate Division reasonably determined that "any error in the admission" of petitioner's statements – during which he denied his involvement in the assault and robbery – "was harmless." *Fashaw*, 134 A.D.3d at 491, 21 N.Y.S.3d at 236. *See also United States v. Bailey*, 743 F.3d 322, 342-45 (2d Cir. 2014) (error in admission of defendant's exculpatory statements was harmless in part because the "particular exculpatory statements, even if false, cannot be deemed particularly important to the prosecution case").

4.      **Excessive Sentence**

Petitioner's final claim – that his sentence of 18 years' imprisonment was excessive and should be reduced in the interests of justice – was presented to the Appellate Division as a question of state law (SR 72-75), and is presented to this Court in the same form. Pet. at 4. It is therefore not a cognizable *habeas* claim.

"Although New York's Appellate Division has the power . . . to reduce a sentence in the interest of justice, a claim for a reduction in sentence . . . does not, without more, raise a federal constitutional issue." *Bonilla v. Lee*, 35 F. Supp. 3d 551, 572 (S.D.N.Y. 2014). *See also Baide-Ferrero v. Ercole*, 2010 WL 1257615, at *4 (S.D.N.Y. Mar. 31, 2010) ("[A] claim that a sentence should be reduced in the interest of justice does not allege a violation of a federally protected right.") (collecting cases); *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) ("Edwards claims that his sentence should be reduced in the interest of justice. To the extent that this claim relies on state-law principles, it is not cognizable on federal habeas review."); *Jenkins v. Artuz*, 2003 WL 21499889, at *3 (E.D.N.Y. June 13, 2003) ("The assertion that a sentencing judge abused his or her discretion in sentencing is not a cognizable federal claim subject to review by a habeas court.") (internal citations omitted).[8]

Even if petitioner had articulated a federal basis for his sentence challenge, the claim would fail, because "[i]t is well established that generally when a sentence falls within the range prescribed by state law, the length of the sentence may not be raised as a basis for federal habeas relief." *Melendez v. LaValley*, 942 F. Supp. 2d 419, 424 (S.D.N.Y. 2013). *See also White v.*

---

[8] Petitioner's excessive sentence claim would also fail as procedurally barred, because it "was not argued in federal constitutional terms in his brief to the Appellate Division." *Irons v. Ricks*, 2003 WL 21203409, at *8 (S.D.N.Y. May 22, 2003). Indeed, petitioner did not cite to any provision of the U.S. Constitution in connection with his excessive sentence claim, (SR 72-75), and may not do so for the first time now. *Irons*, 2003 WL 21203409, at *8.

*Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.").

Petitioner's concurrent sentences, which in the aggregate imposed an 18-year prison term and five years of supervised release for assault in the first degree, two counts of robbery in the first degree, and two counts of criminal possession of a weapon in the second degree, are within the range prescribed by state law. *See* N.Y. Penal Law §§ 120.10 ("Assault in the first degree is a class B felony."), 160.15 ("Robbery in the first degree is a class B felony."), 70.02(1)(a) (2011) (defining a "Class B violent felony offense" to include "assault in the first degree as defined in section 120.10"), 70.02(2)(b) (2011) ("[f]or a class B felony, the term must be at least five years and must not exceed twenty-five years," absent exceptions not applicable here).[9] Consequently, no federal constitutional issue is presented.

## III.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the Petition be DENIED.

Chambers will mail a copy of this Report and Recommendation to petitioner *pro se*.

Dated:  New York, New York
        August 25, 2020

_____

**BARBARA MOSES**
**United States Magistrate Judge**

---

[9] N.Y. Penal Law § 70.02 has been amended several times since petitioner's sentencing in May 2012. I quote the version in effect at the time of petitioner's sentencing, which does not vary in relevant part from the version currently in effect.

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Katherine Polk Failla at 40 Foley Square, New York, New York 10007. No courtesy copies need be delivered to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Failla. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).